(110 App. Div. 267.)

### HARRISON v. VILLAGE OF NEW BRIGHTON.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—RESOLUTIONS OF GOVERNING BODY.

Where a contractor for the construction of a sewer in a village street petitioned the village trustees to change the line of the sewer from the center of the street to a point near the curb line, and agreed to put in a number of house connections, which were not within the contemplation of the contract, if the trustees would make the concession, a resolution of the trustees granting the petition did not create a new contract with the contractor, such as to preclude the trustees from rescinding the resolution a few days later and before any work was done under it.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 886.]

2. SAME—CONTRACTS FOR PUBLIC WORKS—DUTIES OF CITY ENGINEER.

Where the plans and specifications for a village sewer showed the depth of the excavation required, and the specifications provided that the plans were to control the depth of the excavation, the failure of the village engineer to give specific instructions as to the depth of the excavation and to furnish grades for the laying of pipe in accordance with a provision of the contract, requiring the engineer to furnish all necessary stakes, or marks, for lines, grades, cuttings, etc., did not impose any liability on the village for damages suffered by the contractor because of such failure, in the absence of a clear demand by the contractor upon the engineer for specific instructions as to the depth of the excavation at specific places.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 905.]

3. SAME—WAIVER OF PROVISIONS.

Where a contractor for the construction of a sewer in a village extended the excavation for a much greater distance than was allowed by the contract to be open at any one time, and further failed to shore up the sides of the excavation, as required by the contract, so as to prevent it from caving in, the contractor could not recover from the village damages caused by the caving in of the excavation, although the village engineer under whose general supervision the contractor was required to work, did not object to the violation of the contract in the particulars specified.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 905.]

4. SAME—CONSTRUCTION OF CONTRACT.

Where printed specifications of a contract for the construction of a sewer in a village provided that no tunneling should be allowed except on "written permission," of the village engineer, and typewritten specifications prohibited tunneling "unless otherwise ordered by the engineer," there was no conflict between the typewritten and written stipulations, and the permission of the engineer to do tunneling, was required to be in writing, notwithstanding a provision of the contract that typewritten stipulations should prevail over printed ones.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 883.]

5. MANDAMUS—LEVY AND COLLECTION OF ASSESSMENT—REMEDIES OF CONTRACTOR.

Where a contract for the construction of a sewer in a village provides for payment as soon after the completion and acceptance of the work, "as the assessment for the construction of the same shall have been collected by the trustees, and not before," the proper remedy for the contractor, if the trustees refuse to levy and collect the assessment, is by mandamus to compel them to proceed.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Mandamus, § 202; vol. 36, Cent. Dig. Municipal Corporations, § 910.]

**6. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENT—RIGHTS OF CONTRACTOR —ENFORCEMENT OF PAYMENT.**

Laws 1866, p. 1804, c. 819, tit. 3, § 1, subd. 3, empowers trustees of the village created by the act, to construct sewers; subdivision 20 of the same section empowers them to audit claims against the village; title 4 (page 1809) empowers them to assess the expense of improvements upon particular inhabitants of the village; title 5, p. 1816, § 1, empowers them to raise by taxation money to be expended for roads and improvements; title 6 (page 1820), prohibits them from borrowing money or from issuing bonds, except as specifically authorized by law; and title 7, § 2, requires all work to be done for the village to be by contract founded on written bids, etc. Laws 1896, p. 286, c. 241, amends title 4, so as to provide that, where sewers have been constructed, the board of trustees may issue certificates for an amount not to exceed the expenses and contract price of the construction of such sewers. A contract for the construction of a sewer provided that the contractor should be paid after the work was completed and accepted and "as soon thereafter as the assessment for the construction of the same shall have been collected by the trustees, and not before." *Held,* that the contractor could not recover any money or enforce any payment due on account of the construction of the sewer, without either showing that an assessment had been levied and the money received therefor, or that the trustees of the village had in some way put it out of their power to levy an assessment.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 905, 910.]

**7. SAME—PLEADING.**

In an action to recover sums of money due the contractor as incident to the construction of the sewer, an allegation in the answer of the village that the contractor had been paid in full the amount due under his contract was not an admission that the necessary assessment had been levied and paid.

Appeal from Judgment on Report of Referee.

Action by Louis B. Harrison against the village of New Brighton. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and CLARKE, JJ.

Terence Farley, for appellant.

Newell Lyon, for respondent.

INGRAHAM, J.  This action was commenced on December 23, 1897, against the village of New Brighton, to recover the damages which the plaintiff claims to have sustained by virtue of a failure of the employés of the defendant to comply with the provisions of three separate contracts, by which the plaintiff's assignors were to construct sewers in the village of New Brighton.

The provisions of the three contracts are similar. The specifications for the work made part of the contracts were composed of partly printed and partly typewritten provisions, and it was provided that where the printed and typewritten specifications conflicted the typewritten specifications were to control. In the proposals for estimates it was provided that the bidders were to satisfy themselves as to the accuracy of the estimate of the engineer, and should not at any time dispute or complain of such statement or estimate of the engineer, nor assert that there was any misunderstanding in regard to the depth of the excavation to be made or the nature or amount of the work to be done; and the bidders were also informed that no deviation from

the specifications would be allowed, unless written permission should have been previously obtained from the trustees on the recommendation of the village engineer. The contract provided that the contractor should furnish and provide all the necessary labor and materials, and, in strict conformity with the specifications and plans therein mentioned, should build and complete the sewer. The party of the second part (plaintiff) also agreed that he was satisfied as to the accuracy of the estimates and statement of the engineer, and that he would not, at any time, dispute or complain of such statement nor assert that there was any misunderstanding in regard to the depth of the excavation to be made or the nature or amount of the materials to be furnished or work to be done; and he further covenanted and agreed that he would complete the entire work to the entire satisfaction of the village engineer and in substantial accordance with said specifications and the plans therein mentioned, and that he would not ask, demand, sue for, or recover for the entire work any extra compensation beyond the amount bid. The typewritten specifications provided: "For location, depth of cutting, size of sewers, location of manholes, flush tanks, etc., see plans and profiles referred to"—and that no more than 150 running feet of trench in any one street covered by the typewritten specification should be open at one time. The contractor agreed to use sheet piling or bracing in his trenches, as the engineer in charge should direct, and when so directed the sheet piling was to be left in the trenches without charge for the same, but in no case should tunneling be permitted. In the printed specifications there was a provision that all excavations should be open out from the surface; that no tunneling would be allowed, except written permission be previously obtained from the village engineer. It was further provided that all work should be subject to the approval of the engineer, and all materials should be subject to his inspection before being used; that all condemned materials should be immediately removed from the site of the work, and condemned work should be taken up and done anew at the expense of the contractor. It was further provided that "all necessary stakes or marks for lines, grades, cuttings, etc., shall be furnished by the engineer of the village," and also that the contractor should do such extra work in connection with his contract as the village should, in writing, specifically direct, and in a first class manner, but that no claim for extra work would be allowed unless the same was done in pursuance of a written order as aforesaid to do work as such, and the claim presented at the first regular meeting of the board of trustees after the work was done; that "payments will be made to the contractor after the work is completed and accepted by the trustees of the village, and as soon thereafter as the assessment for the construction of the same shall have been collected by the trustees, and not before." Under this contract the plaintiff performed his work, turned the sewer over to the defendant and received his money, and then commenced this action to recover what he claimed was increased cost of the work caused by the action of the village employés.

It will be noticed that by the typewritten specifications, which were to control when inconsistent with the printed specifications, it was provided that "for location, depth of cutting, size of sewers, location

of manholes, flush tanks, etc., see plans and profiles referred to"; and in connection with this clause it was provided in the printed specifications that "all necessary stakes or marks for lines, grades, cuttings, etc., shall be furnished by the engineer of the village," and in the contract itself it was provided that the plaintiff should do the work in strict conformity in every part and particular with the following specifications and the plans therein mentioned, which specifications and plans, and each and every thing therein contained "is and are part of this contract"; and he further covenanted and agreed that he would complete the entire work "in substantial accordance with said specifications and the plans herein mentioned, and that he will not ask, demand, sue for, or recover for the entire work any extra compensation beyond the amount bid," and will not assert that there was any misunderstanding in regard to the depth of the excavation.

So far as the claims of the plaintiff were disallowed by the referee, it is not necessary on this appeal to consider them as the plaintiff does not appeal. The defendant appeals from the judgment, claiming that the plaintiff is not entitled to recover at all, and it is necessary, therefore, to consider the various claims made by the plaintiff which were allowed by the referee and for which the plaintiff has recovered a judgment. The plaintiff, in his brief, divides these claims into four groups, and they will be considered in the order in which they are there stated. The first group is for damages sustained by the plaintiff because of the rescission of a resolution of the defendant's board of trustees changing the location of the sewer in Jewett avenue. This claim was disallowed by the referee, except the sum of $40.96 for freight upon certain pipes that were delivered upon the work. I do not think that the plaintiff was entitled to recover any portion of this claim. It is based upon a resolution of the board of trustees of the village, passed June 29, 1897, the contract having been executed on the 26th day of May, 1897. The only evidence of such a resolution is a statement in the minutes of the board of trustees that:

"A letter was received from P. H. Harrison & Sons asking permission to change the sewer line on Jewett avenue, in the centre of said street, to a point 6½ feet from the curb line; and, on motion of Mr. Brantingham, the motion was carried."

The letter upon which this was based was not produced, but the plaintiff testified that the substance of the letter was that the contractors petition the board of trustees to change the line of the sewer to a point within 6½ inches from the curb line, the contractors agreeing to put in a number of house connections 6 or 8 feet in length, if they would make this concession. It seems to me that the passage of such a resolution created no contract which prevented the board of trustees, if they had power to pass it, from rescinding it before any work was done under it. The alleged consideration for what was called a contract was a proposal of the contractors to put in a number of house connections, but it was not a part of the contract to connect houses upon this avenue with the sewer, and it was not the work of the village to make such connections, nor were any specific connections mentioned. The defendant could not have compelled the contractors to make any particular connections. The request was to

change the sewer line, and "on motion of Mr. Brantingham the motion was carried." What motion it was that was carried is not stated, and all that can be gathered from this entry is that the board was willing to consent to such a change; but on July 2, 1897, three days after the resolution was carried, this action was rescinded. It is not claimed that any work was done under it, except that the plaintiff testified that he ordered some pipe for making these connections, a matter with which the defendant had nothing to do. I think it is evident that there was no contract made binding upon the defendant or anybody else, by virtue of this resolution. If the village trustees had a right to change the location of the sewer from the middle of the street to the side of the street, it had a right to change the location back again from the side to the middle of the street, which was the effect of the rescission of the resolution. An entirely different question would be presented had the contractors constructed the sewer upon the new location and, having so constructed it, the village had refused to pay for it upon the ground that it was not in the location as shown upon the plans; but there was no binding contract made by the passage of this resolution and the rescission of the resolution imposed no liability upon the village.

The second group of claims specified by the plaintiff are for damages suffered because of the neglect of the defendant's engineer to furnish preliminary and working grades or grade indications. For these the referee allowed the sum of $320.33. The record is very voluminous, and it is difficult to pick out the testimony which relates to this claim, mixed, as it is, with the testimony in relation to other claims of the plaintiff. The plans which were made a part of the contract contain a statement of the depth of the excavations from the surface of the ground, and by the contract the contractors were to construct this sewer according to these plans and specifications. The plans and specifications showing the depth of the excavation required, and it being provided in the specifications that these plans were to control the depth of the excavations, certainly before there could be any liability for a failure to give the specific instructions as to the depth of the excavation, there must be a clear demand upon the engineer for specific instructions as to a specific place. The evidence in regard to any demand on the enginer is indefinite and insufficient, I think, to sustain a finding that the engineer ever refused or declined to furnish the necessary stakes or marks for line grades and cuttings. The testimony of the plaintiff was simply that stakes, with grade marks on them, were set at some points, which do not seem to be specified, before the plaintiff commenced the work, and some were set while the work was in progress; that the witness had asked the engineer for them repeatedly while the work was in progress, but did not get them. There was here no evidence of a request for information as to the depth of the excavation at any particular place. The plaintiff's foreman testified that Major Barrett was the engineer in charge of the work; that no stakes had been set showing the lines on which the cuttings were to be made; that Mr. Randall, who seems to have been one of the contractors, laid out the line before the work was started according to the plans and specifications; that the witness asked Maj. Barrett

or his representative for grades, and the plaintiff got them some time or other, he could not recall how many times they got them, or how long they had to wait, but did not get them right away; and immediately subsequent to that he testified that the engineer gave the plaintiff grade for a greater distance than 150 feet at one time, that the grade man worked continuously, sometimes half a day, or a part of a day, putting these grade pegs in the bottom of the ditch, and that he asked for grades on Egbert avenue a day or two after they started and, probably two days after, he got them. There are indefinite statements made from time to time by the witness that he asked for grades, and sometimes he says he got them and sometimes he says he did not get them, but he testified generally that he ran the grade out according to the profile as near as he could recollect, and that that was the grade he went by. The testimony as to any delay in consequence of a failure to obtain these grades, or as to any damage caused thereby, is entirely too indefinite to base any finding upon. I think, therefore, that this claim for damages should have been disallowed.

The third claim is stated to be for the damages suffered because of the neglect of the defendant's engineer to furnish grades for the laying of pipe and his refusal to permit the laying of pipe. For this claim the plaintiff was allowed $6,467.75. These awards seem to be based upon a disagreement between the engineer and the plaintiff as to whether the excavation was in a condition for the laying of the pipes, whether the contractors had excavated to the proper depth as required by the plans and specifications, and whether the village is responsible for the cost to the contractor of his completing the work according to the instructions of the engineer, and his decision as to what was required by the contract. What I have said in relation to the evidence as to giving the grades in relation to the second group of claims applies equally to this claim. The evidence as to the failure of the engineer to give these grades when demanded is insufficient, so far as I can see, to base any claim that there was any neglect of the engineer to comply with the provisions of this contract. A large part of this claim is based upon the cost of re-excavating because of the caving in of the trenches, and the plaintiff claims that this caving in was caused by a refusal of the engineer to allow the defendant to lay its pipes when they had excavated the trench as required by the plans and specifications. It is clear that a large portion of the damage claimed was caused by caving in because the contractors excavated a trench of a much greater length than 150 feet, in violation of the contract. The evidence is undisputed that this excavation was continued until the trench was open for about 800 feet. The learned referee seems to have been of the opinion that the provision of the contract, that the excavation should not at any one time exceed 150 feet, was waived. There is no evidence that I can find that would justify a finding that the defendant waived any provision of the contract. The contract provided that the contractor would shore up the sides of the excavation so as to prevent this caving in that occurred. The caving in was thus caused by a failure by the plaintiff to comply with these two provisions of the contract, and no neglect of the engineer to enforce these pro-

visions could be such a waiver as to subject the defendant to a claim for damages caused by a violation of the contract by the contractors. It is not claimed that the engineer expressly consented to this extension of the excavation. All that he did was not to object. This certainly cannot sustain a claim for damages that were caused by such a violation of the contract. A discussion of the evidence in this case is quite impossible, but from such an examination as I have been able to make, I think it is insufficient to justify a claim that a mere delay of the engineer's in giving permission to lay the pipe imposed any liability upon the defendant for the cost of re-excavating a trench built in violation of the contract. I think, generally that the evidence is insufficient to justify the referee in awarding the plaintiff any portion of this claim.

The last claim allowed by the referee was for damages suffered by the contractors through being required to open out a tunnel which had theretofore been made pursuant to the directions from the engineer. The printed specifications provided that no tunneling should be allowed except written permission be previously obtained from the village engineer. The typewritten specifications provided that no tunneling should be permitted unless otherwise ordered by the engineer. It is conceded that no written permission was given to construct this sewer through a tunnel. The evidence is that there was a dispute about using an excavating machine at this point. A witness for the plaintiff testified that the engineer said that they could construct a tunnel at the locality. After the tunnel had been made he said it would have to be higher, and after they made it higher he compelled them to make it an open-cut. For the additional expense of opening this cut the plaintiff was allowed the sum of $100. I do not think this claim was properly allowed. There is no evidence that I can find that there was any additional expense by reason of the fact that the plaintiff first made a tunnel and was afterwards compelled to open it up so as to make an open-cut. By the contract the work had to be done to the satisfaction of the engineer, and the plaintiff in making a contract in this form assumed the obligation to do the work as required by him, and within reasonable limits, the carrying out of his instructions imposed no liability upon the defendant. The typewritten provision of the contract is that there should be no tunneling except with the permission of the engineer, and that was supplemented by the printed part of the contract which required that that permission should be in writing. There was certainly no inconsistency between these two provisions. Both contemplated action by the engineer, and read together, the permission was required to be in writing. The provision was undoubtedly inserted to obviate just what happened, so that no liability should be predicated upon a verbal permission of the engineer when the giving of such permission was denied. My conclusion upon all this evidence is that the finding of the referee was not sustained by the evidence.

There was, however, another question presented which also stands in the way of any recovery by the plaintiff. The cause of action sought to be enforced is one that existed at the time the action was commenced, which was before the consolidation of the village of New Brighton as a part of the city of New York, and if, therefore, this money sought to

be recovered in this action was not due and payable by the village of New Brighton at the time the action was commenced, this action cannot be maintained. At the commencement of the trial the defendant moved to dismiss the complaint upon the ground that there was no allegation in the complaint that any money had been collected by assessment for this sewer, and consequently, under the contract no money was payable to the plaintiff. This motion was based upon a provision in the specifications that payments would be made to the contractor after the work was completed and accepted by the trustees of the village, "and as soon thereafter as the assessment for the construction of the same shall have been collected by the trustees, and not before." It is quite manifest that under this provision no cause of action would have existed under this contract against the village for the amount provided by the contract to be paid to it until an assessment for the construction of the sewer had been levied and collected. The proper remedy for the relator, if the trustees refused to levy and collect such an assessment, was to compel by mandamus the officers of the village to proceed with such assessment and collection. People ex rel. Ready v. Mayor, etc., 144 N. Y. 63, 38 N. E. 1006; Hunt v. City of Utica, 18 N. Y. 442; Weston v. City of Syracuse, 158 N. Y. 274, 53 N. E. 12, 43 L. R. A. 678, 70 Am. St. Rep. 472. As was said in the case last cited:

"Such a provision as to work of this character is usual and reasonable, for, as the municipal authorities have no right to make such improvements at the expense of the taxpayers generally, it follows, first, that no money is raised by general taxation that is available for the payment of such expenses; and, second, that it is necessary to make the avails of the special assessment meet the obligations of the city under the contract. All of this known to the contractor when he makes his bid and enters into the contract, and presumably he has provided suitable compensation to himself for the loss of the use of the sums due under his contract until a reasonable time shall have elapsed in which to levy the assessment and make collection."

The power of the trustees of the village is regulated by the act incorporating it. Chapter 819, p. 1794, Laws 1866. By subdivision 3 of section 1 of title 3 of that act (page 1804) the trustees were given power to construct sewers, culverts and drains; and by the twentieth subdivision of that section, power to audit all claims against the village of New Brighton. By title 4 of the act (page 1809) the trustees were given power, whenever in their opinion the whole or a part of the expenses of any improvement they make in the village (except the opening, widening, or altering of any road, avenue, or street) ought to be borne by a particular part or by particular inhabitants of the village, to charge such expense, or such part thereof as they may deem just, upon a particular part or upon particular inhabitants of the village, and may make an assessment for that purpose. By title 5, p. 1816, § 1, the board of trustees were given power to raise annually by taxation upon the taxable inhabitants of the village, such sum of money as they should deem proper, the same to be expended in the payment of the expenses of the corporation for roads and improvements and to carry into effect the several powers and privileges granted and conferred by the act. By title 6, p. 1820, the board of trustees were expressly prohibited from borrowing money, or from issuing any bonds,

or other evidence of debt, or from incurring liability for the payment of money in any year beyond the revenue of that year, except as authorized by the act or as may be specifically authorized or provided by law, and debts contracted contrary to the true meaning and intent of this section were declared absolutely null and void as against the corporation. Title 7, § 2, provided that all work to be done, and all supplies to be furnished for the corporation, should be by contract founded on written bids or proposals made in compliance with public notice. By chapter 241, p. 286, of the Laws of 1896, title 4 of this act was amended to provide that where sewers have been constructed the board of trustees were authorized to issue certificates under the corporate seal for an amount not to exceed the expenses and the contract price of the construction of such sewer, or system of sewers. By this act the powers and duties of the board of trustees of the village of New Brighton were defined and limited with great particularity. They had power to construct sewers and to make contracts; but such contracts could only be based upon a bid received in pursuance of public notice therefor. They had power to provide that the expense of constructing a sewer should be assessed upon the property benefited thereby, and provision is made for imposing and collecting such assessment. It was evidently the intention of the Legislature that the expense of constructing sewers should be borne by the property benefited, and the cost or expense of the sewer should not be paid by the tax-payers as a whole. In the exercise of this power the trustees made a contract for the construction of this sewer, and provided that payments were to be made as soon as such assessment should have been collected by the trustees, and not before.

Now, I think that these claims of the plaintiff, if valid, were part of the cost of constructing this sewer. They are sums of money claimed to be due to the plaintiff as incident to the construction of the sewer. The trustees were prohibited from incurring any indebtedness, and all obligations except as provided for in the act are declared null and void. These contractors assumed to do the work and agreed to accept payments provided for doing the work from the moneys when realized from collection of the assessment to be imposed by the trustees of the village for the improvement. Certainly, before they can recover any money or enforce any payment due on account of the construction of this sewer, they were required to show either that an assessment had been levied and money received therefor, or that the trustees of the village had in some way put it out of their power to levy an assessment, and thus bring the case within Weston v. City of Syracuse, supra. It was there said:

"First, that no money is raised by general taxation that is available for the payment of such expenses; and, second, that it is necessary to make the avails of the special assessment meet the obligations of the city under the contract. All this is known to the contractor when he makes his bid and enters into the contract, and presumably he has provided suitable compensation to himself for the loss of the use of the sums due under his contract until a reasonable time shall have elapsed in which to levy the assessment and make the collection. * * * "If he finds, as in the case of Ready v. Mayor, etc., supra, that the city has not proceeded with reasonable diligence to collect the assessment and turn over the proceeds to him, he may and should proceed by mandamus to compel such action on its part. But where a mu-

nicipality disables itself from performing the contract by such action on its part and makes void and, therefore, uncollectible an assessment, for the purpose of providing compensation, or refuses to perform the contract on its part, as in Reilly v. City of Albany, 112 N. Y. 30, 19 N. E. 508, then an action against the city for the damages sustained by reason of its failure to perform the contract on its part may be maintained."

It is claimed, however, that the allegation in the answer that the plaintiff had been paid in full the amount due under his contract would be used as an admission that an assessment had been levied and paid, but as the village had power to raise money for the purpose of paying the amount due to the plaintiff under the contract by means of temporary obligations and which would be reimbursed by the collection of the assessment for the improvement, payment of the amount conceded to be due cannot make an allegation that the condition under which the plaintiff was entitled to the money had been performed, so as to put the village in default for the payment of this sum which was claimed as a part of the expense of the construction of the sewer unnecessary. The plaintiff, to be entitled to recover, was required to allege and prove that the amount which he sought to recover was due at the time of the commencement of the action. There was no allegation in the complaint that the assessment had been collected or that defendant was unable to impose such an assessment, and no such proof was offered upon the trial. For this reason, I think that the whole cause of action fails and that the complaint should have been dismissed. Upon the whole case, I think the plaintiff has failed to prove any cause of action against the defendant.

It follows that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.