THE BROOKLYN PUBLIC LIBRARY, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

Second Department, January 13, 1928.

Municipal corporations — contracts — Laws of 1902, chap. 606, empowered city of New York and plaintiff to enter into contract for maintenance of public library system — statute and contract provided that amount required for maintenance should be city charge to be provided for in annual budget — present action is to recover semi-annual interest paid on mortgage since October 30, 1903, and insurance premiums — plaintiff's remedy was by mandamus to compel appropriation each year — action cannot be maintained — general appropriation included allowance for interest and insurance premiums under practical construction of contract — recovery in action may be had in excess of claim filed where excess covers interest — interest commences to run from date of demand and not thirty days after filing of claim, under Greater New York Charter, § 261 — if contract under seal, twenty-year Statute of Limitations is applicable to interest and insurance premiums due in 1903 — contract was not sealed by city of New York — contract may be sealed instrument as to one party and not as to other — court may examine record on prior appeal to determine whether contract was sealed — claims barred by six-year Statute of Limitations.

This action is to recover on a contract between the city of New York and the plaintiff, which was executed pursuant to authority vested in the city by chapter 606 of the Laws of 1902. The plaintiff seeks to recover the semi-annual interest paid on mortgages on certain property and the insurance premiums on the same. The statute authorizes the city of New York to enter into a contract for the maintenance of a public library system in Brooklyn and provides that the amount required for such maintenance shall constitute a charge " to be provided for in the annual budget and tax levy of said city." The contract entered into contained a similar provision. Since 1903 the interest on the mortgage on the property in question and the insurance premiums have been paid from the rental fund received by the plaintiff. During the entire period the city prepared lump sums for the maintenance of the library and prior to 1910 estimates submitted by the plaintiff contained no specific request for money to pay the interest and insurance premiums, but from 1911 to 1923 the estimates did contain specific requests. The contract also provided that taxes and assessments upon any property of the Brooklyn public library, insurance charges, interest on mortgages, and reasonable cost of repairs were to be regarded as part of the cost of maintenance of the library system.

The plaintiff's remedy is not by an action to recover the amount of the interest charges and insurance premiums but the plaintiff should have each year

mandamused the board of estimate and apportionment to compel the inclusion in the budget of an amount sufficient to care for said interest charges and insurance premiums.

Where, pursuant to statutory authority, as in the present case, an obligation is lawfully incurred in advance by contract to be paid out of funds subsequently to be set aside and gathered together following an appropriation, before an action may be maintained for breach of such a contract with such a provision, by way of enforcing payments thereunder, the body required to levy the assessment or appropriate the money must be mandamused to provide the funds out of which payments may be had.

Assuming, however, that this action might be maintained, there seems to have been a practical construction of the contract by the parties to the effect that although the required specific appropriations were not in form made they were either waived or presumptively included in the lump sum of the appropriations for maintenance generally.

A recovery has been allowed in excess of the demand filed with the comptroller, under section 261 of the Greater New York Charter. The excess consists of interest. Since the amount recovered on the principal of the claim is not in excess of the amount set out in the notice of claim filed with the comptroller, the fact that interest brings it beyond that amount does not vitiate the judgment.

The contention by the defendant that interest does not commence to run until thirty days after a claim was filed, under section 261 of the Greater New York Charter, is not valid if demands were made each year independently of the statutory requirements of the service of a notice of claim, and assuming that mandamus was not required. The prior demands, under the presumption stated, would start the running of interest.

As to semi-annual interest payments and insurance premiums due in 1903, the present action, which was begun in March, 1924, if maintainable, would have been barred by the twenty-year Statute of Limitations, assuming that the contract sued upon is one under seal, for, although the interest charges and insurance premiums were paid within twenty years, they should have been included in the 1903 budget.

The contract entered into between the parties was not a sealed instrument so far as the city of New York is concerned, although it was sealed as to the plaintiff, for the city seal was not used on the contract nor was there any authorization to seal the contract.

An instrument may be sealed as to one party and not sealed as to another.

The Appellate Division has the right to examine and consider its own prior records in this action for the purpose of determining whether or not the contract in question was sealed by the city of New York, and the examination of a photostatic copy of the contract, printed in a record on a prior appeal, clearly shows that the contract was sealed only as to plaintiff.

Accordingly, since the contract was not sealed as to the defendant, the six-year Statute of Limitations applies, and if the action were otherwise maintainable, the claims accruing more than six years prior to its commencement, would be barred.

YOUNG, J., dissents, with memorandum.

APPEAL by the defendant from a judgment and an order of the Supreme Court, entered in the office of the clerk of the county of Kings on the 10th day of March, 1926.

*Elliot S. Benedict [George P. Nicholson, Corporation Counsel, Charles Horowitz* and *J. Joseph Lilly* with him on the brief], for the appellant.

*Meier Steinbrink,* for the respondent.

CARSWELL, J.. This plaintiff was constituted a corporate body by Laws of 1902, chapter 606, as amended by Laws of 1903, chapter 500,* to be known as " The Brooklyn Public Library." It succeeded two previously existing corporations, created by special statutes, which owned and operated certain library properties in Brooklyn. This new corporate body was constituted to carry out the plan of receiving the gift of $5,200,000 from Andrew Carnegie to the city for library purposes. (Laws of 1901, chap. 580.)† This plaintiff corporation (which had certain other sources of income) was authorized to contract with the city for the construction and maintenance of public libraries, and the city was empowered to make a contract with the plaintiff for the maintenance of a free public library system in the borough of Brooklyn in conformity with Laws of 1902, chapter 606. Section 4 of the latter statute empowered the city of New York to contract for the maintenance of the library system and further provided: " The amounts required for such maintenance shall constitute a city charge, *to be provided for in the annual budget and tax levy of said city.*"

A contract pursuant to these statutory provisions was made by the city of New York and the plaintiff, and it is upon that contract that this action is based. The complaint sets out sixty-two causes of action, one for each semi-annual interest payment on the mortgage on certain Montague street property commencing October 30, 1903, and one for each year's insurance premium on the Montague street building commencing August 31, 1903. The aggregate principal of these different sums so claimed is $134,453.43, and it is for this amount, with interest aggregating $96,854.53, that the plaintiff has had judgment totaling $231,426.38. A notice of claim therefor was filed with the comptroller November 30, 1923, the amount demanded being $175,000.

The answer admitted the existence of the mortgage in question but put in issue the essential allegations of the complaint. It also set up the twenty,- ten- and six-year Statute of Limitations as to certain of the causes of action.

Plaintiff's Exhibit 2 shows that the appropriations made by the city for the support of the plaintiff ranged from $186,700 for 1903 (the smallest amount) to $709,679 in 1921 (the largest amount),

---

* Since amd. by Laws of 1910, chap. 272.— [REP.

† Since amd. by Laws of 1905, chap. 296.— [REP.

and that the last appropriation before this action was begun was
$654,759.43. It also appears that in the years 1920, 1921 and
1922 the plaintiff did not spend all of its yearly appropriations.
These credit balances were added to its 1923 appropriation, so
that it had a total of $749,869.11 for that year, and from this sum
$86,652.54 was transferred to the directors' fund to meet shortages
in appropriations for that year for the purchase of books and for
other purposes.

The treasurer's annual reports in evidence show that payments
for insurance and interest on the mortgage on the Montague street
property were made from the rental fund, and that in practically
every year from 1903 to 1923, inclusive, the amount yearly received
in rentals was more than enough to cover the payments made each
year.

It was conceded on the trial that the city made no *specific* appro-
priations to pay the amounts of these insurance premiums and
interest charges on the mortgage on the Montague street property,
but appropriated lump sums for maintenance. in the budgets.
The *estimates* submitted by the library to the board of estimate
and apportionment for the years 1903 to 1910, inclusive, *contained
no specific requests* for sums to discharge these interest and insur-
ance payments, but the corresponding estimates from the plaintiff
from 1911 to 1923, inclusive, did contain such specific requests.

The contract sued upon provided: *"Fourth.* The city, the party
of the first part, hereby agrees that, in addition to the amount it is
obligated to pay and appropriate under the agreement of September
11, 1901, above referred to and pursuant to the provisions of the
act, chapter 580 of the Laws of 1901, *it will appropriate* and pay
for the maintenance and support of said Brooklyn Public Library
such sums as may be requisite for the proper maintenance of the
libraries theretofore under the administration of the Board of
Directors of the Brooklyn Public Library, and of the corporation
' The Brooklyn Library ' above mentioned, such amounts to con-
stitute a city charge, *and to be provided for in the annual budget and
tax levy of the city.* It is, however, agreed and understood, as
provided in Section 5 of Chapter 606 of the Laws of 1902, that the
entire amount of the annual appropriation made by the Board of
Estimate and Apportionment of the City of New York for the
conduct and maintenance of free public libraries in the Borough of
Brooklyn, shall be disbursed and paid from time to time by the
Comptroller, upon submission to him of proper vouchers, in form
to be approved by him, for obligations incurred or moneys expended
for the use and purposes of the said free library system."

It also provided in paragraph 6: " For the purposes of this

agreement, however, it is understood that any taxes and assessments upon any of the property of said *Brooklyn Public Library, insurance charges, interest upon mortgages above recited and reasonable cost of repairs are to be regarded as part of the cost of maintenance of the said free library system.*"

At the end of the contract there was a testimonium clause: " In witness whereof, the party of the first part has caused this agreement to be executed by the Board of Estimate and Apportionment of the City of New York, pursuant to a resolution adopted at a meeting of said Board of Estimate and Apportionment, held on the fifth day of June, 1903, *and the party of the second part has hereunto* caused its seal to be affixed and the execution thereof attested by its officers, the 5th day of June, 1903, City of New York, by the Board of Estimate and Apportionment." This is followed by the signatures of the members of the board of estimate (except that of the president of the borough of Richmond) and of the president and acting secretary of the plaintiff. There is also an indication of a single seal.

The defendant moved to dismiss the complaint and for a direction of a verdict. These motions were denied. The plaintiff's motion to direct judgment was granted.

The defendant insists that the complaint should have been dismissed because this action may not be maintained by the plaintiff and also because of the effects of the Statutes of Limitation invoked.

(1) The defendant claims that the prosecution of this action at this time is not available to the plaintiff; that the remedy was by mandamus at the time of each refusal to appropriate the moneys sued for, if it be the fact that the defendant failed in its duty to make the requisite appropriations for these interest and insurance charges. (*People ex rel. Ready* v. *Mayor,* 144 N. Y. 63, 66; *Hunt* v. *City of Utica,* 18 id. 442; *Harrison* v. *Village of New Brighton,* 110 App. Div. 267, 277; *Fidelity & Deposit Co.* v. *City of New York,* 108 id. 263, 268; *Holroyd* v. *Town of Indian Lake,* 180 N. Y. 318, 324; *People ex rel. Carlisle* v. *Bd. of Supervisors,* 217 id. 424, 431; *People ex rel. O'Loughlin* v. *Prendergast,* 219 id. 377, 382; *People ex rel. Cropsey* v. *Hylan,* 199 App. Div. 218, 221; affd., 232 N. Y. 601; *Matter of McAneny* v. *Bd. of Estimate, etc.,* Id. 377, 386.)

The plaintiff insists that these cases are not applicable. It claims that one group is inapplicable because each case therein relates to a situation where a contract is made with a city for the doing of certain work, and the payment for that work is to be had from a special assessment. In such situations an action at law may not be maintained; the remedy is to mandamus the board having the duty to levy the assessment or provide the moneys, before an

action or other procedure may be taken to enforce payment. The *Hunt, Harrison* and *Holroyd* cases are of this character, and the *Fidelity* case is somewhat similar, in that, before payment could be had there, the city was obligated to raise the requisite funds by the issuance of bonds upon application therefor being made to it. But this does not affect the applicability of the principle of those cases to the situation herein. By the express terms of the Enabling Acts herein involved, as already stated, it is provided (Laws of 1902, chap. 606, § 4): " The amounts required for such maintenance shall constitute a city charge, *to be provided for in the annual budget and tax levy of said city.*" And in paragraph 4 of the contract sued upon the city became obligated, by express agreement, pursuant to stated statutory authority, that it " will *appropriate* and pay for the maintenance and support of said Brooklyn Public Library such sums as may be requisite," and that " such amounts " are " to constitute a city charge, *and to be provided for in the annual budget and tax levy of the city.*"

Thus, by express statute and precise provisions of the contract between the plaintiff and the defendant, it is provided that the obligations as they accrue each year are to be saddled upon the city in that year's annual budget and tax levy. This statutory and contractual plan required the plaintiff, if it deemed that the board of estimate was not appropriating the requisite amounts required by the contract, to mandamus it to make the requisite appropriations. The contract contemplated the creation of a fund out of which the obligations were to be met, and specified *the time* of its creation. The method of the creation of the fund was expressly provided to be by appropriations in advance of the year during which the payments were to be made. This is in no sense any different from a contract for the doing of work to be paid for out of special assessments to be *thereafter* levied pursuant to law, and, therefore, the principle of these special assessment cases is not inapplicable. The ordinary contract with the city is made *after* there has been an appropriation or a setting aside of moneys to cover the same. In such an instance, if the city breaches its contract the remedy is an action at law. The fund out of which payment is to be had is in existence. Where, however, pursuant to statutory authority, as in the special assessment cases, as well as in the case at bar (a specially provided for general assessment case), an obligation is lawfully incurred in advance by contract, to be paid for out of funds subsequently to be set aside and gathered together following an appropriation or special assessment, before an action may be maintained for breach of such a contract with such a provision, by way of enforcing payments thereunder, the

body required to levy the assessment or appropriate the money must be mandamused to provide the funds out of which payments may be had. This is the principle of all of the above cases, including the group referred to as special assessment cases.

In *People ex rel. Carlisle* v. *Board of Supervisors* (217 N. Y. 424, 431) the question involved was identical with the situation here, except that the obligation did not arise from the contract. The counterpart of this contract obligation was, however, contained in the effect of a notice of the highway commissioner certifying the need of certain items for maintenance and repair of highways, to be included in the general tax levy. This notice created a duty which paralleled the duty, if there was one in this case, to make certain appropriations to meet the plaintiff's needs with respect to items herein concerned in a year covered by the annual appropriations involved. The commissioner of highways, in that case, had certified that certain repairs and items covering the same should be included in the general tax levy, upon the ground that they were necessary, as shown by his certification. The board of supervisors failed to include the amounts which, under such procedure, were *by statute* required to be provided for. The court there held that the board of supervisors of Onondaga county was properly required to convene, to assess and levy taxes for the maintenance of these highways in the towns involved, and to do what they should have done when first requested. In the instant case *the statute* (as in the *Carlisle* case), as well as the contract, required the appropriation to be made when the library *made known* its needs under the contract as well as under the statute.

In *People ex rel. O'Loughlin* v. *Prendergast* (219 N. Y. 377, 382) a mandamus issued directing the board of estimate to make an appropriation for certain salaries for which the register's office had made request in the departmental estimate of needful salary appropriations. The register had absolute power to create the obligation, and, therefore, the board of estimate was obligated to make the appropriation, although it did not do so. The appointee did not sue for his salary, even though he had been lawfully appointed. It has not as yet been held that he could sue in advance of an appropriation. The fund was not in existence out of which to pay him. The court said: " The appointee is not suing for salary; the officer who appointed him is asking for an appropriation which will make provision for the salary. The board of estimate was requested in 1913 and again in 1914 to make this appropriation. It refused to do so. Its refusal was unlawful, and it has remained charged with the continuing duty of complying with the demand. The mandamus compels the performance of a duty which ought to

have been fulfilled before. Its effect is to make the appropriation, and thereby supply the fund from which payment may be obtained."

An apt statement of the principle that should control herein is given in *Fidelity & Deposit Co.* v. *City of New York* (108 App. Div. 263, 268): " Where a particular mode of discharging the obligations of municipal corporations is provided by law, that mode must be pursued; and it is only when the corporation is put in default in omitting to discharge some duty imposed upon it by statute after the proper steps have been taken, that an action will lie." (Citing *Swift* v. *Mayor, etc., of City of New York*, 83 N. Y. 528, 535; *Dannat* v. *Mayor*, 66 id. 585, 588.) This is from a case relating to the raising of money by sale of bonds upon application by the trustees of a college to the board of estimate.

These authorities and the reasoning of them seem to require a holding that this action may not be maintained. The principle in these cases with respect to municipal affairs and contracts of this character with such bodies is very salutary. This plaintiff, contracting with the city, had enforced upon its attention, both by the statute and the contract, that the means for paying the obligations under the contract were to be provided for *subsequently to the creation of the obligation,* in a particular way, to wit, *by appropriation in the annual budget and a tax levied therefor that very year.* It is, therefore, just and equitable that a party so contracting with the city, in the event that it claimed that particular appropriations required under the contract were not made, should be required to move to compel the appropriating body to provide the requisite funds, so that the burden of them may be carried by the taxpayers during the time or period that the empowering statute, as well as the contract, provided they should be carried. At such a time, the question would then come up of whether the appropriations being made generally for maintenance and support of the library pursuant to the contract were being made more liberal in other particulars than they would have been if the plaintiff had insisted upon these particular items by appropriate procedure. The situation here is that for years these particular items were being taken care of out of the rental fund, produced by rented portions of the premises. It may well be that, if the plaintiff had seasonably insisted by appropriate mandamus proceedings that these insurance and interest items be provided for, the appropriations for maintenance generally would not have been as liberal as they were, and yet would, on a less liberal basis, be ample to meet the obligations of the city under the contract. There is another element of practical viewpoint affecting the situation. These items that are sought to be recovered have extended back

over a period of twenty years.    The board of estimate during that period has a constant or frequent change of personnel, and the same is true of the employees handling such matters.    The real reasons why the matter was handled as it seems to have been during this long period of time are possibly lost to the city because of these personnel changes.    A party to a contract such as this, with so specific a provision with respect to providing of funds, should not be permitted to capitalize the disadvantage that grows out of the foregoing by its conduct in allowing the matter to become dusty, musty and moss-covered, and then resurrect the claim twenty years afterwards.    This view does not put the plaintiff to any substantial disadvantage.    If the claims were just, they should have been and were required under the cases cited to be pressed seasonably by an appropriate mandamus proceeding.    To allow the plaintiff to enforce a claim of this sort, in an action, without the condition precedent of mandamus, would be to enable the plaintiff, in conjunction with the inaction of the board of estimate of which it complains, to violate *the statute* and the contract, which provided that the burden of these particular items was to be carried in each annual budget and tax levy.    The effect of the procedure the plaintiff has been allowed to pursue herein is to saddle these items covering twenty years upon a single year's tax levy, in violation of both the statute and the contract.

The principle of the cases cited, sound reasoning, and the provisions of the Enabling Act and the contract involved herein, with respect not only to the manner of providing the funds but to the time for so providing, *i. e.,* " in the annual budget and tax levy," require it to be held that this action may not be maintained, and that the plaintiff's remedy was to proceed by mandamus on each successive occasion that its demands were refused, upon which occasion, with all the facts then before the proper body, the question could be accurately determined and the effect of that decision considered in connection with the appropriations made generally for maintenance of the plaintiff pursuant to the contract, as well as those made beyond the contract's requirements.    It may well be that, if the plaintiff were right and such mandamus proceedings successfully prosecuted, no occasion to sue would arise, and, if it did, the plaintiff would probably have the remedy of an action at law and/or possibly a concurrent remedy of a further mandamus to compel the payment of the moneys so previously required to be appropriated.

If the foregoing view be accepted, that ends this case, and the judgment herein should be reversed and the complaint dismissed. However, the other questions urged will be considered.

(2) The city claims that the acquiescence for twenty years in

the annual appropriations made for the maintenance of the library, pursuant to the general duties and obligations of the city under the contract sued upon, shows a practical construction by the parties that there should not be included therein these specific insurance and interest items. With the practical situation of available moneys in the rental fund to take care of these items, a practical view was taken by plaintiff of the degree of liberality of the city in other particulars generally, and this because there was in substance no breach of the contract by the city in failing to make *specific* appropriations for these items. The contract (¶ 6) required that these insurance charges and interest upon mortgages were to be deemed part of the cost of maintenance. It seems to me that this provision is an express requirement that they be provided for at all hazards. It may be that the conduct of the plaintiff in not seasonably pressing its demands in this particular misled the defendant's appropriating officers, but that would not, if this action is maintainable, bar a recovery. This may merely be an argument to sustain the applicability of the principle that a cause of action may not be maintained at all in advance of appropriate mandamus proceedings requiring the board of estimate to make the requisite appropriation. The city seeks in effect to have the contract construed to mean that, although the required specific appropriations were not in form made, they were either waived or presumptively included in the lump sum of the appropriations for maintenance generally. I am of the view that this contention is not without validity, although a minority of this court deems it to be without merit.

(3) The appellant city claims that the plaintiff has recovered an amount in excess of the demand filed with the comptroller pursuant to section 261 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws of 1912, chap. 452). The amount that has been recovered by the plaintiff is in excess of the sum set out in the claim, but that is due to the addition of the item of interest. The principal recovered is less than the sum set out in the notice of claim filed with the comptroller, being $134,453.43. The amount of the claim is $175,000 and the excess above that amount is due to the addition of interest added to the sum of $134,453.43. The appellant relies upon a case that is of no avail to it. In *Reed* v. *Mayor* (97 N. Y. 620) it was held that in a tort action the damages recoverable were not limited to the amount fixed in the notice of claim filed with the comptroller, and, therefore, the trial court had the power to allow an amending of the complaint enlarging the amount of damages sought to a point greater than that stated in the claim filed with the comptroller.

Second Department, January, 1928.        [Vol. 222

The purpose of the requirement of the filing of the notice of claim is to apprise the comptroller of the facts upon which it is based, and the exact amount claimed by way of damages is not an essential part of the claim, as the court in the above case held. Therefore, especially since the amount recovered on the principal of the claim is not in excess of the amount set out in the notice of claim filed with the comptroller, the fact that interest (damages) brings it beyond that amount does not vitiate the judgment in any particular. To hold otherwise would be to put a premium on delay by the city in meeting its obligations.

(4) The appellant city claims that, assuming any of this principal sum recovered upon was due, interest thereon could not and should not have been computed until after the expiration of thirty days following the filing of the plaintiff's claim with the comptroller. The claim filed with the comptroller pursuant to section 261 of the Greater New York Charter was dated November 28, 1923, and it is claimed that interest should be computed from December 28, 1923, and that no interest ran prior to this latter date.

The answer to this claim is found in a case cited by the city. In *Smith* v. *Board of Education* (208 N. Y. 84, 86) it is said: " It must be regarded as well settled that a claim against a municipality, although liquidated and due at a definite date, does not draw interest until demand has been made for its payment, unless it is otherwise agreed. *This rule is independent of any statutory requirement such as the familiar one that notice of claim must be served on the municipality some time before suit can be commenced thereon.* It is based rather on the consideration that it would be inconvenient and burdensome for the officials of a municipality to seek its creditors and tender payment of their claims, and also that it would be oppressive and unjust to permit creditors of a municipality with good credit to turn claims into investments through omitting to present them and then collecting interest thereon."

The matter in our italics above shows that the notice of claim under section 261 has nothing to do with the starting of the running of interest, unless it be, as happened in *Sweeny* v. *City of New York* (173 N. Y. 414), that the *only* demand made upon the city was the one contained in the notice of claim filed pursuant to section 261 of the charter. If, as in the case at bar, demands were made each year independently of the statutory requirement of the service of a notice of claim under section 261 of the charter, then those prior demands started the running of interest, if there was no condition precedent requiring the plaintiff to have an appropriation provided for by appropriate mandamus proceedings. There is, therefore, no merit in the appellant city's contention in this respect, if a con-

dition precedent, requiring the plaintiff to obtain an appropriation by mandamus proceedings, did not exist.

(5) The appellant city claims that causes of action Nos. 1 and 2 accrued more than twenty years and thirty days prior to the beginning of this action. This action was begun in March, 1924. The first cause of action relates to the interest charge of $1,600 due on the mortgage which was paid by the plaintiff October 30, 1903. It seems to me that this contention of the appellant city is sound. This item should have been provided for in the budget of 1903, which was adopted more than twenty years prior to March, 1924. The plaintiff knew in advance of the need for the payment of interest on the then existing mortgage; that such interest would become due on October 30, 1903, and the claim (assuming no obligation to compel appropriation existed) accrued when the board of estimate failed to incorporate in the year 1903 budget this particular item upon the request of the plaintiff, and this 1903 budget would in the ordinary course be adopted in December of the preceding year.

It is no answer to say that the contract provided that such obligations incurred and moneys expended were to be disbursed by the comptroller on proper vouchers. The need and opportunity to provide for this known obligation existed at the time of the adoption of the budget. After such moneys were provided for, the comptroller would not be free to pay them out until presented with vouchers. But this did not preclude the providing for them in the budget upon demand by the plaintiff. It seems, therefore, that cause of action No. 1 was barred by the twenty-year Statute of Limitations, assuming the contract sued upon herein is one under seal and, therefore, within section 47 of the Civil Practice Act.

The second cause of action, for $1,032.62 fire insurance premium, was due and paid on August 31, 1903. This obligation was known and could have been provided for in the 1903 budget. It is no answer to say that fire insurance premiums vary. In 1902, from August on, contract obligations covering insurance respecting a period one year or even more than one year beyond that time may be incurred and provided for, and at the earlier date the precise amount of the premium can be ascertained. Since it was a 1903 disbursement, it could have been provided for in the year 1903 budget adopted in December of 1902. Therefore, this cause of action was barred under section 47 of the Civil Practice Act.

(6) The defendant appellant claims that causes of action Nos. 3 to 50, inclusive, as well as causes of action Nos. 1 and 2, being more than six years old, were barred because they may be enforced only on the theory that the contract sued upon herein is a sealed instrument.

28

Second Department, January, 1928.    [Vol. 222

The city asserts that in the resolution of the board of estimate and apportionment authorizing the making of the contract there is no authorization that the seal of the city of New York shall be affixed to it. In paragraph 7 of the contract it is provided that the contract may be modified in writing, but there is no provision that such modification must be by an instrument under seal. The testimonium clause of the agreement does not recite that the board of estimate and apportionment is sealing the instrument. It only recites that the party of the second part, the plaintiff, is affixing its seal and having execution thereof attested by its officers. The copy of the contract in the record does not indicate what the seal is, other than merely the word " seal." It seems that the original of the contract on file with the comptroller was not produced at the trial. It seems to be the law, as stated in *Smith* v. *Henning* (10 W. Va. 596), quoted in *Matter of Pirie* (198 N. Y. 209, 215): " To constitute a sealed instrument, there must be a seal or scroll affixed, *and some recognition of it in the instrument, or some evidence of it aliunde;* but it can never be maintained that such evidence, whether by the proof of witnesses or acknowledgment of the party, will not supply the place of such recognition." (Italics ours.)

In *Atlantic Dock Co.* v. *Leavitt* (54 N. Y. 35, 41) an instrument was held to be a sealed instrument of a person even though the instrument did not profess to contain either his signature or his seal, but it was proved by competent evidence that he had executed the instrument and adopted the seal opposite his name, the court saying: " Where two persons execute a sealed instrument, and the seal is placed opposite the name of one, *it must be shown that the other adopted the same seal, but this may be shown by any competent evidence;* and here we have an express acknowledgment of the grantee. It matters not that the grantee did not subscribe the deed with his name. This is not essential to a sealed instrument. All that is essential is that a party should execute it by sealing it as his instrument. The seal makes it his deed or specialty." (Italics ours.)

And it is said by Dillon in his Municipal Corporations (5th ed. § 361), the italics being ours: " Respecting seals, the same general principles apply to private and to municipal corporations. Thus, a corporation of the latter class would doubtless be bound equally with a private corporation by any seal *which has been authoritatively affixed* to an instrument requiring it, though it be not the seal regularly adopted." (Citing authorities.)

From the foregoing it appears that a party may adopt the seal of another party as his seal and make the instrument a sealed instrument with a single seal sufficing for all parties if it in fact be

adopted by all of them, and that a municipal corporation may adopt a seal other than the one provided in the statute.* In this case the city of New York is provided with a seal by section 2 of article 2 of chapter 1 of the Code of Ordinances, which is the present revised form of the general ordinance duly adopted January 3, 1898. (Ord. & Res., etc., Mun. Assem., 1898, etc., vol. 1, p. 3, No. 1), which was existent in 1903 when the contract in question was made. In order, however, that a municipality may be bound by a seal other than its own seal, it must appear, as Dillon says, to be a " seal which has been authoritatively affixed." If the word " seal " on this contract in the record was authoritatively affixed by the board of estimate, then it is a sealed instrument of the city. But it appears, *first*, that the testimonium clause indicates that the city, through its board of estimate, is not sealing the instrument, the only one who is sealing it being the party of the second part, the plaintiff; *secondly*, as to whether it was authoritatively affixed by the city, it appears that the resolution authorizing the making of the contract does not authorize the affixing of a seal, and, therefore, such a seal as may be affixed on the contract is not authoritatively affixed thereto on behalf of the city; and, *thirdly*, while the instrument itself does not contain evidence that the seal affixed thereto was authoritatively affixed by the city through its officers, and it may, to use the language of *Atlantic Dock Co.* v. *Leavitt (supra)*, " be shown that the other adopted the same seal, but this may be shown by any competent evidence," there is, however, no such evidence in this record other than that contained in the instrument itself, which, under the foregoing, is insufficient to establish it as a sealed instrument or specialty of the city. Instead of there being " any competent evidence " in the record to establish a compliance with the language quoted from *Matter of Pirie*, to " constitute a sealed instrument, there must be a seal or scroll affixed, *and some recognition of it in the instrument, or some evidence of it aliunde*," there is the contrary, since the instrument negatives the claim that the city sealed it and there is no evidence outside of the instrument to show that the city in fact sealed it. It, therefore, seems to me that this is not a sealed instrument so far as the city is concerned.

It is asserted by the respondent that it cannot be a sealed instrument so far as the plaintiff is concerned because of its having affixed its seal, and be a mere simple contract so far as the city is concerned. If the city saw fit not to seal it, the city cannot have the effect of a sealed instrument forced upon it without its consent.

---

* See Laws of 1901, chap. 466, § 31; since amd. by Laws of 1920, chap. 733.— [REP.

All of the foregoing is limited within the four corners of this record. It appears, however, that the appellant asserts that there is a photostatic copy of this contract in the records of this court in *Brooklyn Public Library* v. *City of New York* (212 App. Div. 878). That was an appeal *in this action* from an order granting a preference. This court, and the trial court likewise, may examine and consider its own prior records in this action. An examination of the printed copy in that record reveals that the only seal upon the contract involved herein was that of the Brooklyn Public Library, the plaintiff herein, and in that record it appears that the seal and the signatures of David A. Boody, the president of the plaintiff, and Harrington Putnam, the acting secretary, were affixed on June 12, 1903. There was no seal, nor the word " Seal," opposite any name except that of David A. Boody, as president of plaintiff, and Harrington Putnam, as acting secretary. The authorization by resolution of the board of estimate is dated June 5, 1903, and this resolution contains no authority to seal the instrument on the part of the city. The testimonium clause in the record herein states that the seal is affixed and its execution attested by the party of the second part, the plaintiff herein, by " its officers," meaning the officers of the plaintiff. This affidavit of Hill, containing this copy, was referred to on the trial in this case. It seems the trial court deemed the certified copy before it sufficient to sustain the proposition that the city had adopted some scroll thereon as its seal.

It may well be that the city could adopt any scroll as its seal, but to do so effectively it must be authorized to do so, and the authority is lacking in this case so far as the record shows.

I am of the opinion that this instrument sued upon is not a sealed instrument so far as the city is concerned, and that, therefore, the twenty-year Statute of Limitations period with respect to sealed instruments under section 47 of the Civil Practice Act, has no application and causes of action Nos. 1 to 50, inclusive, are barred by the six-year Statute of Limitations. (Civ. Prac. Act, § 48.)

This view eliminates all of the plaintiff's recovery herein except so much thereof as is based upon the causes of action Nos. 51 to 62, both inclusive, and interest thereon.

The judgment should be reversed upon the law and the facts, with costs, and the complaint dismissed, with costs.

LAZANSKY, P. J., and SEEGER, J., concur; KAPPER, J., concurs on first ground stated in opinion. YOUNG, J., dissents with memorandum.

YOUNG, J. (dissenting). Here there was an agreement to pay on the part of the city. The provision that the amount was to be

put in the budget annually was incidental and could not affect the absolute agreement to pay. The cases cited by the city do not seem to me to be in point. Some of them merely hold that mandamus was the proper remedy under the facts presented; others, that the action was not maintainable because the party sued was under no obligation to pay, or that there was a provision in the contract that payment should not be made until assessments were laid and collected or bonds sold.

Upon reargument, judgment and order reversed upon the law and the facts, with costs, and complaint dismissed, with costs.