**CITY OF EL PASO v. PAN AMERICAN SUPPLY CO.**

No. 4775.

Court of Civil Appeals of Texas. Waco.

Dec. 13, 1950.

As Amended on Denial of Rehearing March 1, 1951.

H. E. Brockmoller, Asst. City Atty., Travis White, City Atty., El Paso, for appellant.

Andress, Lipscomb & Peticolas, El Paso, for appellee.

SUTTON, Justice.

This is an appeal from a judgment of the 41st District Court of El Paso County awarding damages to the appellee occasioned by the running of surface water into the basement of a store building owned and operated by the appellee which damaged goods stored therein.

The trial was to a jury on the facts and the case submitted on special issues the answers to which, in the opinion of the trial court, were favorable to the plaintiffs, appellee here. Pan American Supply Compa-

ny is a partnership owned and operated by a father and son, A. V. Sanchez and E. A. Sanchez. The plaintiff is engaged in the retail hardware business at 311 South El Paso Street in the City of El Paso. The building is situated on the west side of El Paso Street and an alley running parallel with South El Paso and between it and Santa Fe Street. The alley is paved its whole width and length so far as plaintiff's building is concerned, and it is alleged it is so maintained because of the traffic over it and as well to take care of the water that runs through the alley during rains.

During the summer of 1949, there were small leaks of water into plaintiff's basement about which the plaintiff complained to the city suggesting the water was coming from a sanitary sewer of the city. The city received at least two such reports and as many times made an investigation. The early part of August 1949, the city cut a hole in the concrete pavement in the alley and close to a chute that opened from the alley into the basement of plaintiff, which chute had been used, and could be, to unload goods and materials from the alley into the basement. The purpose of the excavation was to uncover sewer pipes and determine if the water was from that source. It was determined water was leaking from a loose-jointed private service sewer line that connected with the city's main line in the alley. The inference is some repairs were made and the dirt from the excavation returned to the hole made to fill it. The concrete removed to make the excavation was not immediately replaced and had not been for some 12 or 14 days when a rain came and water that accumulated in the alley found its way through the excavation and into plaintiff's basement. That damage occurred seems not to be disputed and no point is made thereon.

Plaintiff alleged the failure to replace the concrete was negligence and the proximate cause of the damage sustained. The city answered denying it was negligent, saying it was the usual and customary practice to leave a hole such as this one was in a street or alley until the dirt replaced had

had time to settle and pack, so when the concrete was replaced the dirt below would not recede therefrom and leave it without support. The city further pleaded affirmatively there was a large hole in the wall of the chute through which the water previously had percolated; that on each occasion it had inspected the basement the hole had been called to the attention of the plaintiff and suggestion made that it should be repaired to keep the water out and plaintiff was negligent in failing to repair the hole and but for such negligence the damage would not have occurred, and such was the cause or contributing cause of the damage.

In response to a special issue the jury found there was no hole in the wall of the chute and acquitted the plaintiff of contributory negligence. The answer thus made is the basis for the city's first point and complaint, which is, the answer is against the overwhelming weight of the evidence. The city has with great care and ability briefed this point and has with great pains distinguished between the "no evidence" rule and the "weight of evidence" rule contended for. It would serve no purpose here to review the authorities cited and discussed. There is testimony in the record by the city's Superintendent of Water and Sewage; by its supervisor of the Sanitary Storm Sewer Division; by three crewmen who worked on this job that there was a hole there and it had been called to the attention of plaintiff, as was claimed by the city. There was positive testimony by Sanchez, Senior, nothing like that occurred, and that there was no hole in the wall of the chute prior to the rain. The son likewise testified positively there was no hole there, each saying they had run a new concrete floor in the basement a few years prior thereto and they had inspected for defects at that time and had had numerous opportunities to discover such a hole had it been there and there was none there. Five employees and former employees of plaintiff and one janitor who had worked in the basement prior to the purchase and occupancy of plaintiff testified they had had many opportunities to be in the basement and observe the conditions therein and were

familiar with the chute and that they had never seen a hole such as was claimed and described as being there. The jury had to find one way or the other and disregard some testimony to do so. Why they elected to make the answer they did is not for this Court to determine. It is our conclusion the answer is not against the overwhelming weight of the testimony and the point may not be sustained.

■ The jury found the city negligent in not replacing the concrete in the alley before the rain, and points 2, 3 and 4 have to do with that finding, predicated on the proposition the finding is without support in the evidence. It is argued in this connection there is no evidence the city was negligent in not replacing the concrete, and that it is affirmatively established by the city's testimony it is the accepted practice to leave a hole in the pavement if a street open so the traffic will tamp the replaced dirt before the pavement is applied, otherwise the dirt will recede from the pavement and leave it unsupported by the earth beneath. The city developed the fact the dirt was brought to about the level of the surface and that a man returned daily over a period of four or five days to add more dirt as it settled; that it settled about two inches each day. There is testimony the dirt carried into the basement was fine earth. This testimony supports an inference the dirt replaced was fine and soft. This was not an ordinary opening in a street, but one in an alley and close to a chute opening into a basement; one from which water had percolated from the area of the opening into the basement. One of the city's witnesses testified, while digging the hole, he discovered a "sinkhole" which he opened to some extent and poked a portion of his body into and looked through it right into the basement. Small amounts of water from a loose-jointed sewer line had found its way through the dirt from the location of the hole made to the basement. We think all the facts and circumstances support an inference the city could foresee and anticipate the thing that did occur and the failure to do whatever was reasonably necessary to replace the concrete promptly was negligence and the point not well taken.

■ Points 5 and 6 complain of the form in which Special Issue No. 1 was submitted. The issue reads:

"Do you find from a preponderance of the evidence that the failure of the defendant City of El Paso to replace the concrete or hard surface over the hole which had been dug by them prior to the rain on or about August 12, 1949, was negligence?"

The specific complaint is the use of the word "failure" in the issue is a comment on the evidence and carries with it an implication of fault on the part of the city. Objection was urged to the issue and a special issue submitted using the words "action of the City in waiting to replace the concrete". We are unable to believe the use of the word failure in anywise prejudiced the city. It is a well-established practice to inquire of the jury if they believe there was a failure to keep a lookout, to properly apply brakes, to furnish a safe and proper place to work, etc., and then ask if such were negligence. The failure to replace the concrete is an admitted fact here. We think the jury well understood the Court was inquiring about an omission rather than a fault.

■ The city finally complains of the action of the Court in permitting the plaintiff to file a trial amendment setting up a claim for the cost of the extra expense incurred to clean up after the flooded condition and the submission of such item on the ground the claim was never formally presented to the city as is required by a charter provision. One effective answer to this contention is the law never requires the doing of a useless thing. Plaintiff filed a claim for damages occasioned by the water that entered the basement. It is true the damage was described as damage to goods and not for cost of labor incurred in cleaning up. The claim was rejected, and we take it on the theory the suit was defended on, because it denied liability therefor. The city may waive the presentation of a claim, City of Waco v. Thralls, Tex.Civ.App., 172 S.W.2d 142 (e. r.), and denial of liability has consistently been held to constitute waiver, generally, e. g. in insurance cases. T.J. Vol. 24, p. 1111, Sec. 292; and Ten Year Sup. Vol. 6, p. 267, Sec. 292 and the

many cases cited. The Charter provision only required that the complaining party before he files his suit shall apply to the city council "for redress, satisfaction, compensation or relief, as the case may be" and show that same was by the council refused. Plaintiff, we think, fully complied with that provision. It will be noted there is no requirement that his application show the amount. Certainly if a smaller amount be rejected it will not be presumed they would allow a greater amount growing out of the same transaction. It is said in the absence of a statutory requirement the amount of the damage need not be set out, 63 C.J.S., Municipal Corporations, § 925(5), p. 365; nor the amount of damages growing out of tort, and unliquidated damages. Brooklyn Public Library v. City of N. Y., 222 App. Div. 422, 226 N.Y.S. 491, loc. cit. 502(3); Burdick v. Richmond, 16 R.I. 502, 17 A. 917.

We conclude there is no error in the judgment and actions of the trial court and the judgment is affirmed.

### On Motion for Rehearing

PER CURIAM.

The full Court has given careful consideration to the motion for rehearing filed herein and concluded the same should be overruled.

McGILL, Justice (concurring on motion for rehearing).

When this case was submitted and for several weeks thereafter the writer was seriously ill and therefore did not hear the oral argument or participate in the original decision. Because one of the chief points presented on appellant's motion for rehearing involves a question of fact as to which the jurisdiction of this court is final, I have given very careful consideration to the motion, have read the entire statement of facts, the briefs of both parties, and the motion for rehearing and reply thereto. There can be no question but that this court not only has the power but that it is its duty to set aside a jury finding and to remand the cause for another trial when such finding is so against the great weight or preponderance of the testimony as to carry conviction that to uphold the verdict would be clearly

wrong and manifestly unjust; that in deciding this question this court considers all of the evidence and not merely the evidence favorable to the finding. Appellant has cited the authorities at great length which enunciate this rule but I think the rule is so elementary that no citation of authorities is required to support it.

In deciding whether or not a verdict should be set aside under the rule this court does not consider the credibility of witnesses. It can not do so, since the witnesses are not before it and it is not qualified to judge their credibility. Its function is limited to a consideration of the quantity and quality of the evidence and it can and frequently does give more weight to quality than to quantity. Passing on the quality of the testimony is always a difficult and troublesome function. There can be no compromise between the testimony of one of the plaintiffs, A. V. Sanchez, and the witnesses Umbenhauer, Price, Lozano, Holguin and Bracero. Each of these witnesses without equivocation testified as to the presence of a hole at the base of the recess or chute in the rear wall of the basement of plaintiffs' building prior to the rain which did the damage to plaintiffs' goods in their basement, of which they complain, and the digging of the hole in the alley. The witnesses Umbenhauer, Price and Holguin also testified that they had pointed out the hole to this plaintiff and suggested that he have it fixed, that this would prevent the seepage which had occurred in the basement prior to the time of the rain which caused the damage complained of. This plaintiff categorically denied that there was such hole, and that any of the witnesses had pointed any such hole out to him. As between this plaintiff and these witnesses it is largely a question of credibility. The jury necessarily must have believed that the testimony of A. V. Sanchez was true and that of these five witnesses false, or they could not have answered question No. 6 as they did. They have passed on the credibility of this plaintiff and these witnesses, and as stated, it is no part of the function of this court to pass on such credibility. As to the quality of the evidence of course the plaintiff A. V. Sanchez was an interested party, since he

was asserting a claim to something over $3,-000 against the city. The witnesses above named I think were also interested parties— interested to the extent that if the damage was caused by their negligence in digging the hole in the alley and permitting it to remain uncovered, thus causing the damage to plaintiffs, such negligence was a serious reflection on them, especially the witnesses Umbenhauer, Superintendent of the Water and Sewerage Department, and Price, a Supervisor of the Sanitary Sewer and Storm Sewer Division of the Department of Water and Sewerage of the City of El Paso. It certainly would have been a reflection on their ability and their capability to hold the positions they did hold with the city. The same may be said of the interest of the witness Lozano, who was a foreman in this kind of work. Certainly he was interested in not performing the work assigned to him in a negligent manner; therefore, although there is a difference in degree of the quality of the evidence, yet I think that these witnesses were interested to a certain extent. A different rule as to quality, I think, is applicable to the testimony of plaintiff E. A. Sanchez and the witnesses Garcia, Flood, Meraz, Martinez, Sedino and Neva. It appears that the plaintiff E. A. Sanchez was not present when the witnesses Umbenhauer, Price and Lozano testified that they pointed out the hole to plaintiff A. V. Sanchez and advised him to have it fixed, according to their testimony. The testimony of this plaintiff and of the witnesses above named amounts to no more than that they were in the basement numerous times prior to the rain and the digging of the hole in the alley, had every opportunity to observe the recess or chute in the rear wall of the building and to see a hole in the base thereof if there had been such a hole, and that they did not see such hole. The testimony is negative in its nature and of a different quality than the positive testimony of the other five witnesses that there was such a hole; that they saw it. If we were to act on the numerical strength of the testimony without any regard to the jury's finding, which involves credibility, I should be forced to dissent from my brethren in their decision that finding No. 6 should not be set aside. However, I think that this court is not so limited. Appellant also urges that the physical facts clearly point to the existence of the hole before the rain; that it is unreasonable to suppose that the accumulation of water in the hole in the alley with the dirt that was admittedly in such hole could exert enough pressure on a rock wall to push it in or wash it in, even though the testimony of appellant's witness Umbenhauer as to the maximum pressure caused by the water in the hole be disregarded. I do not think that the physical facts point so clearly to a hole before the rain that the case should be disposed of on this basis. There is abundant testimony that prior to the rain water had seeped into the basement and it seems quite reasonable to me that an accumulation of water outside of the rock wall, even though mixed with earth, may have caused a seepage through the mortar of the wall, gradually started a flood and resulted in a washout. I have noted with interest the fact that there is no testimony as to any large rock or pieces of rock having been discovered in the basement after the rain.

Although I entertain grave doubt whether in the light of all the evidence the jury's answer to question No. 6 should be permitted to stand, I resolve that doubt in favor of the trial court's judgment and in accord with the views of my brethren and concur in overruling appellant's motion for a rehearing.