Cecil Blaffer HUDSON, Appellant,

v.

J. Edwin SMITH et al., Appellees.

No. 14386.

Court of Civil Appeals of Texas.

Houston.

May 20, 1965.

Rehearing Denied June 10, 1965.

Levert J. Able and Miller B. Walker, Jr., Houston, and R. Dean Moorhead, Austin, for appellant.

Al Schulman and W. James Kronzer, Houston, for appellees.

BELL, Chief Justice.

This is an appeal from a judgment in favor of J. Edwin Smith and the law firm

of Smith & Lehmann of which he was a member, by which recovery was had of the sum of $130,000.00 as an attorney's fee for services rendered by Smith as an attorney in representing Mrs. Hudson in her divorce suit, together with an attorney's fee allowed appellees' attorney for representing them in this suit. The jury found that a reasonable fee for Smith's services in the divorce suit was $165,000.00. Admittedly he had been paid $45,000.00 and this was credited on the judgment. The jury also found $10,000.00 to be a reasonable fee for the attorney employed by appellees to prosecute this suit. The suit was for $300,000.00.

For several months during the year 1960, appellant and her then husband were having extensive and severe disagreements concerning budgetary matters and the handling of their children. Appellant wished to have an attorney available to consult with her from time to time on these matters. She reached an agreement with Mr. Smith on a retainer of $150.00 per month. She had not at such time decided upon filing suit for divorce. In the latter part of 1960 she decided to file a suit for divorce and on November 1, 1960 Smith filed a suit on her behalf seeking a divorce, custody of the two children, and a division of community property.

On January 20, 1961, Smith wrote appellant a letter setting forth the terms of the agreement with regard to the attorney's fee that would be paid for Smith's handling of all matters involved in the divorce proceeding. The substance of the letter was that Mr. Smith could not set his fee because he did not know the full extent of the litigation that would be involved. He then set out the guides that would be followed in fixing the fee. They were as follows:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to properly conduct the cause.

2. The customary charges of the Bar for similar services.

3. The amount involved in the controversy and the benefits resulting from the services.

There then followed the statement that these were applicable guides designated by Canon 11 of the Code of Ethics of the State Bar of Texas, Vernon's Ann.Civ.St. following article 320a–1 and Canon 12 of the American Bar Association. There was also the statement that if appellant questioned the reasonableness of the fee, Mr. Smith, upon request, would submit the matter to the court for determination as to whether it was reasonable. It was further stated that attempt would be made to have the fee adjudged against Mr. Hudson, but it was pointed out this must finally be determined by the court but if any part of it was adjudged against Mr. Hudson it would be deducted from the total fee earned.

From September or October, 1960, when Mrs. Hudson determined she would sue for a divorce, until some time in October, 1962, Mr. Smith was the sole attorney for Mrs. Hudson. While Mr. and Mrs. Hudson and their attorneys were engaged in a proceeding before a Master in Chancery, who had been appointed by the court, Mrs. Hudson, on October 8, 1962, sent a telegram to the Master stating Mr. Smith no longer represented her. She then engaged one attorney to represent her in the phase of the suit pertaining to the divorce and another firm to handle the phase with regard to her property rights. However, it appears that Mr. Smith was retained to remain in the case to consult and advise with other counsel. Thereafter, Mr. Smith cooperated with and assisted other counsel. Unquestionably the overwhelming amount of the work done was done by Mr. Smith prior to the entry of other counsel and other counsel usefully employed the results of his work, which he readily made available to them, in their negotiations for settlement. Finally, in March, 1963, a property settlement agreement was reached and a judgment for divorce, without real contest, was rendered in favor of Mrs. Hudson and she was grant-

ed custody of the children subject to certain rights in Mr. Hudson.

Appellant, for reversal, makes the following basic claims:

1. The court was in error in quashing a subpoena duces tecum that had been issued for the individual income tax returns of Mr. Smith for the years 1958 through 1962 and in not examining the returns to see what information was material to the controversy. Too, that these errors were compounded by the refusal of the court to permit the introduction of material parts of such returns so appellant could perfect her bill of exception. Related to these complaints is one that it was error for the court not to allow interrogation of Mr. Smith about his income for these years and that appellant was not allowed to perfect her bill of exception by developing such facts through questioning Mr. Smith.

2. The court erred in excluding a letter from Mrs. Smith to Mrs. R. L. Blaffer, mother of Mrs. Hudson, dated October 12, 1962. The substance of the letter asked Mrs. Blaffer to assist in obtaining payment of a bill rendered to Mrs. Hudson a month before. It also related to Mr. Smith's then being ill.

3. The court erred in admitting in evidence the letter from a successor attorney to Mrs. Blaffer setting out the terms of his employment by Mrs. Hudson. It was written in order to obtain a guarantee of the attorney's fee by Mrs. Blaffer. It contained a statement dealing with the emotional state of Mrs. Hudson. It was also executed by Mrs. Hudson.

4. The court was in error in excluding testimony concerning a fee charged by another law firm in a previous divorce proceeding between the Hudsons.

5. That it was error to allow attorney's fees for the attorney employed to bring this suit because there had been no requisite demand by Mr. Smith for his attorney's fee prior to filing this suit.

6. There was error on the part of the Judge of the 133rd District Court of Harris County in striking appellant's Second Amended Original Answer when it had been permitted to be filed by the Judge of the 61st District Court of Harris County.

Appellant contends that each of these asserted errors was of a quality to require reversal. Nowhere is it claimed by a point of error, or an assignment, that the amount of the judgment is excessive. The position of appellant is that the judgment would not have been for as great an amount had it not been for the asserted errors and thus each of them was harmful. There was really no contention on trial that there was not some additional attorney's fee owed though a general denial put appellees on proof of such fact. However, even appellant's witnesses testified a reasonable fee for the work done would be from $75,000.00 to $90,000.00.

Mr. and Mrs. Hudson were married in 1945. Each was, at the time, wealthy in their respective right. Each owned oil and gas interests, other real estate, corporate stocks and valuable paintings. Mr. Hudson was head of Hudson Engineering Company and Hudson Oil & Gas Company. During the marriage of the parties their respective separate estates increased in value and there was the accumulation of a community estate. The parties, through their respective representatives, sought to keep their respective separate estates and the community estate segregated. There is evidence that each purportedly kept a set of accounts on their respective separate estates and each had an account purporting to represent community receipts and expenditures. We take it that Hudson kept a set of accounts representing what he considered to be a separate estate accumulation and what he considered constituted community receipts and disbursements. The same is true of Mrs. Hudson. As is usually true, there resulted, to some extent, a co-mingling of the estates or at least both parties so claimed. As is so frequently true, when love is gone suspicion and bitterness take

its place. The result is, particularly where the various estates aggregate several million dollars, as is true here, there is a necessity for detailed examination of the facts to determine property rights. Too, each parent becomes convinced that only he or she has the welfare of their children at heart and that he or she only knows what will best serve the children's welfare.

The record in this case will give an idea of the magnitude of the work done on the divorce case by Mr. Smith. The direct examination of Mr. Smith, which elicited a statement of the work he did and the time he spent, alone covers 478 pages of the statement of facts, and the whole of his examination, including cross-examination, covers some 680 pages. The attorneys for both sides used the same hypothetical question to propound to the expert witnesses. It catalogued the work done by Mr. Smith and was 74 legal size pages long. We should here note that appellant, in using the question for one of her witnesses, eliminated the time Mr. Smith testified he spent, and with regard to her other witness additionally eliminated the statement that Mr. Smith was responsible for securing the divorce settlement. The whole statement of facts contains 1013 pages. We have read the entire statement. In addition, there are 60 exhibits as a part of the record, many of which are several pages long. We have familiarized ourselves with them. There are various pleadings, orders, inventories and appraisals that were a part of the divorce proceedings. Not in the record are various voluminous depositions taken in connection with the divorce proceedings as well as the testimony taken before the Master in Chancery. While they are not in the record, the evidence reflects the time spent in the hearings and the number of pages of testimony taken.

Mr. Smith alone testified as to the time spent by him on work relating to the divorce suit. He kept no time sheets and his testimony was of his recollection of the time spent on the various items of work. He stated that 75% of his time for the two years was spent on the case. The hours were calculated to be about 4,680. This included 19 days actually spent in taking depositions that aggregated 2644 pages of testimony. These were the depositions of Mr. and Mrs. Hudson, Mr. Hinson, the business manger for Mr. Hudson, and Mrs. Howton, business manger for Mrs. Hudson. The purpose of these depositions, apart from the grounds for divorce and the matters bearing on custody, was to establish the character of the property, whether separate or community, claimed by the parties. This, in many cases, required tracing of funds used in the acquisition of the property. Mr. Smith testified in substance that it was necessary, in preparation for the taking of the depositions, to spend many more hours, he specifying the time, in going over the various books and other documentary evidence with persons familiar with them. that such a time consuming preparation is advisable and necessary is a fact well known to all lawyers. Each party, it should be remembered, was claiming an interest in items of property that the other claimed was either separate property of the claimant or community property. The proceeding before the Master in Chancery consumed 19 days and 1659 pages of testimony were taken. There were three inventories covering real estate, other than royalty, identifying appellant's property, that aggregated 40 pages. The royalty interest inventory consisted of 140 pages. There were extensive inventories covering insurance, jewelry, corporate stocks, and paintings or other art objects. With regard to royalties and real estate, because of disputes concerning the status of some of the items, it was necessary to examine title papers and trace funds. The same is true as to tracing funds into some art objects. For instance, Mrs. Hudson claimed as her separate estate some art objects valued at over $700,000.00, but the claim was complicated because of checks from the community payable to art galleries in the amount of $150,-000.00. There was stock in Hudson Oil &

Gas Company, most of which Hudson claimed was his separate property while Mrs. Hudson claimed much of it was community. Eventually a community interest was established, so Mrs. Hudson from this alone realized about $4,000,000.00. There was a great difference of opinion concerning whether there was any community interest in Hudson Engineering Company. Her claim that there was resulted in her receiving other properties offsetting in substantial part such claim because Hudson was very desirous of retaining all interest in that vast business entity. There was a dispute concerning how much community interest there was in a valuable home in Newport, Rhode Island.

The result was that in the settlement finally agreed upon, Mrs. Hudson retained practically all of her claimed separate estate and received as her share of the community some $6,000,000.00. The settlement was finally reached when other counsel were primarily representing Mrs. Hudson, but it was not, when we consider the amount accruing to Mrs. Hudson, substantially greater than Mr. Smith was able to obtain but which she refused. There can be no doubt under the evidence that the work product of Mr. Smith, was employed as the primary basis for settlement.

In addition to the above there were several short hearings regarding custody of and visitation with the children. Longer conferences between counsel preceded the hearings. There was an ancillary hearing with regard to partition of the parties' interest in a very valuable New York apartment, it being valued at about $150,000.00. There were briefs on legal questions involved.

Two very outstanding members of the trial bar of Harris County gave their opinion as to a reasonable fee for the services rendered by Mr. Smith. One gave his opinion that $300,000.00 would be a reasonable fee, and the other was of the view that $400,000.00 was reasonable.

Two other very outstanding members of the Harris County Bar testified for the appellant. One of them testified that a fee of from $75,000.00 to $90,000.00 would be reasonable. In the hypothetical question asked him he was asked to assume the facts stated in the 74 page statement were true except the time Mr. Smith testified he had given. The other witness was asked to exclude the time and that Mr. Smith had been instrumental in substantial part in bringing about the settlement but to assume the truth of the other facts stated in the 74 page question. He felt $75,000.00 would be a reasonable fee.

The first complaint concerns the quashing of the subpoena duces tecum for Mr. Smith's individual income tax returns for the years 1958 through 1962. There are eight points of error relating to the court's action in this regard. Each point really amounts to an assignment of a different reason as to why the action was error and why it was error for the court not to examine the returns. Too, why it was error not to allow development of a bill of exceptions.

We hold there was no error in the court's action in quashing the subpoena, in not allowing evidence from Mr. Smith about his income; and, in not examining the returns.

When the case was assigned for trial and before voir dire examination of the jury, appellees made a motion denominated "Motion in Limine" asking the court to instruct counsel for appellant not to make reference to income tax returns or earnings of Mr. Smith. The motion was sustained. Thereafter, on October 16, the trial having commenced on October 7, appellant's counsel obtained a subpoena duces tecum for Mr. Smith's income tax returns for the years 1958 through 1962. On motion of appellees the subpoena was quashed. In connection with action on the motion counsel for appellant stated he wanted the returns because he wanted "to know his total income in his law practice over a five year period."

The court stated the record should show that this was appellant's purpose in seeking the returns. The court then sustained the motion and stated that the total income for any or all of the years was immaterial and irrelevant to any issue in the case and therefore even the court had no right to examine and inspect the returns. Appellant's counsel was then asked if that perfected his bill of exception and counsel replied he would have to ask Mr. Smith what his income was for purposes of his bill. The court stated he would permit this and then it was stipulated that Mr. Smith would refuse to answer. Appellant sought nothing further. She at no time stated any other purpose for wanting the returns. Here she asserts she wanted the returns so she could show the time spent on other work, the value Mr. Smith put on his time and what he charged for similar services. She contends this would be relevant in contradicting the testimony of Mr. Smith as to the time he spent on Mrs. Hudson's case. Too, she here contends the information would tend to show no loss of income due to time spent on the Hudson case.

■ We fail to see the materiality of Smith's total income on the issue as to what is a reasonable fee in a given case. This was the only purpose stated to the court for seeking the returns and oral testimony from Smith. We are of the view that where testimony is offered for a stated purpose for which it is not material and therefore not admissible, and the court sustains an objection, there is no error in the court's action, even though in retrospect it may be felt it was admissible for an unstated purpose. It is not for the court to ferret out some conceivable grounds of admissibility. McCormick and Ray, Texas Law of Evidence, Second Ed., Sec. 21, p. 19.

Further, whether work by Mr. Smith on this case resulted in a loss of other employment or earnings is not an issue in this case. The letter of Mr. Smith setting out the basis of his fee did not include the element of loss of other employment. While the Canons of Ethics referred to and the suggested Minimum Fee Schedule of the Texas Bar include as a factor that may properly be considered the loss of other business, Mr. Smith's letter did not include such as an element to be considered. The letter specifically points out, after enumerating the elements to be considered, these are "applicable guides designated" by the specified Canons of Ethics. All applicable guides specified in the Canons are not adopted. Too, nowhere in the testimony does Mr. Smith claim he lost any earnings or employment because of work on the Hudson case. Also, it is to be remembered that Smith was in the partnership of Smith & Lehmann. We feel we judicially know that the individual returns would not show information on individual clients, time spent on a given case or piece of business. It would show income received from the partnership. Even the partnership return shows nothing about time spent on individual clients. It shows total income and expenses. The books of the firm show the detailed information. Even if Smith had individual clients, his individual returns would not show his clients or time spent on each client. This appears from a person's account books. Too, income received in a given year may be for work done in other years.

Too, to seek from the returns the names of clients, the time spent on each, the nature of the work, and the fee charged would too remotely bear upon the issues in the case. Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806; Mrs. Baird's Bread Co. v. Hearn, 157 Tex. 159, 300 S.W.2d 646.

The attempt to obtain the income tax returns was an effort to discover information. Where income tax returns are involved, there is necessarily an invasion of privacy. The result is that our Supreme Court has been very careful to keep this invasion at a minimum and allow it only if, and to the extent that, the ends of justice require. Maresca v. Marks, 362 S.W.2d 299 (S.Ct.).

The court has also given us guides that should be followed in requiring production of income tax returns. In the case of Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434, the Supreme Court held that a pleading showing relevancy and materiality was a condition precedent. It said:

"All parties to our present cause proceed on the theory that discovery will be only as to evidence relevant and material to the main action. With this we agree, and we hold that such relevancy and materiality should be shown in the written application or petition asking for the bill of discovery, or by the pleading in the main cause."

Here there was no proceeding under a bill of discovery but there was not the requisite pleading in the main cause or even oral pleading.

We also note that there was no assignment of error in appellant's Amended Motion for New Trial of error by the trial court in refusing to examine the returns or in allegedly refusing to allow the use of the returns to perfect a bill of exception. The alleged errors are, therefore, waived. We also feel there was never any request to the trial court that the judge examine the returns or that the returns be produced so a bill could be completed. We think this is reflected by the recital above of what occurred in connection with the motion to quash the subpoena.

For all of the above reasons appellant's complaints here concerning any action taken by the trial court with regard to the income tax returns are overruled.

The court excluded on objection a letter written October 12, 1962, by Mrs. Smith, the wife of J. Edwin Smith, to the mother of Mrs. Hudson. It was written, or so the court could have found under the evidence, without the knowledge or consent of Mr. Smith. Mrs. Smith was not a witness in the case. The letter was written while Mr. Smith was in the hospital for a few days. The substance of the letter was that Mr. Smith was in the hospital and experiencing a deep depression. She stated they had financial obligations to meet and she wished the mother would see that appellant paid the bill that was a month old. The theory of the offer was it was an admission by the wife who had a community interest in the money and would corroborate Mrs. Hudson's contention that Mr. Smith was ill and could not take care of her case. The bill referred to was one from Smith & Lehmann for $15,000.00. From time to time as work progressed a bill contemplating payment on the fee was sent. Three of such bills for $15,000.00 were paid and were deducted from the amount found by the jury.

There was no error in excluding the letter.

In the first place, the letter would not be an admission admissible against Smith & Lehmann. If evidence is offered generally which is admissible as against some of the parties but not against others and the court excludes the evidence, there is no error. Luvual v. Henke & Pillot, 366 S.W.2d 831 (CCA), ref., n. r. e.

Further, an admission by the husband or wife is not admissible against the other unless it was authorized. McCormick and Ray, Texas Law of Evidence, Second Ed., Sec. 1170; O'Fiel v. Janes, 220 S.W. 371 (CCA), writ ref.

In any event, the evidence would be purely cumulative because Mr. Smith testified fully admitting this illness. Too, the illness was but for a few days in October, 1962, and shortly thereafter the evidence from other sources shows he was actively engaged in the Master's hearing.

Next appellant complains of the admission in evidence of the letter from Mr. Foreman, the new counsel employed to represent Mrs. Hudson in only the divorce suit, in matters pertaining to the divorce. The letter was written to the mother of

Mrs. Hudson and was signed by Mrs. Hudson as well as the mother. It is dated October 25, 1962. It provided for a fee, payable absolutely, of $100,000.00. The letter contained this statement:

"The reason for this firm commitment and your guarantee as to payment * * * is the volatile and highly emotional state in which I find Mrs. Cecil Hudson at the time I am approached for employment. There is always the possibility she will decide to dispense with my services even as she has heretofore done with Mr. J. Edwin Smith.

"I am advising you that it would be advisable if we were able to retain the services of Mr. J. Edwin Smith in this case. I hope you will elect to do so. * * * We contemplate that Mr. Smith will remain in the case. * *"

When the letter was first offered it was excluded. Then Mrs. Hudson testified and in her testimony was blaming Mr. Smith for not working on the case, and testifying about his alleged illnesses. Too, she testified he was to continue in the case purely as a matter of "professional courtesy".

■ We think the letter was admissible. By signing the letter without taking exception to statements contained in it concerning her emotional state, she adopted the statements. Texas Reciprocal Ins. Ass'n v. Stadler, 140 Tex. 96, 166 S.W.2d 121; McCormick and Ray, Texas Law of Evidence, Second Ed., Sec. 1149. The admissions could be considered by the jury in determining whether it was Mrs. Hudson's emotional state instead of Mr. Smith's illness that was the cause of misunderstanding. Too, it served to impeach Mrs. Hudson because it showed that instead of Mr. Smith's being retained purely as a matter of professional courtesy he was retained because he could be of valuable assistance to appellant. The statements in the letter, adopted by Mrs. Hudson, were inconsistent with her testimony and could be used to impeach her.

Too, we are of the view that the letter fixing the fee in the very same case, under the facts of this record, made the letter admissible on the issue of the reasonableness of Mr. Smith's fee. Neither was a contingent fee. Both were provided by agreement though the amount of Mr. Smith's fee was not set out in his letter. However, a reasonable fee based on the factors set out in the letter was to be paid. Riggs, Ferris & Geer v. Lillibridge, 2 Cir., 316 F.2d 60.

■ The assertion that the letter was a privileged communication between attorney and client was not made at the time it was offered, and such objection was thus waived. However, it was not privileged because written to a third party. Too, it was delivered, without objection, at the time Mrs. Hudson's deposition was taken, so any privilege was waived.

■ The complaint of exclusion of evidence concerning the amount of attorney's fee charged Mrs. Hudson in a previous divorce proceeding against Mr. Hudson cannot be appraised because appellant did not perfect a bill of exception and there was no denial of the right to perfect a bill. A motion in limine asking that appellant not go into the fee was sustained, the court stating not to go into it in the presence of the jury. However, appellant was told she could go into it in the absence of the jury. No effort was thereafter made to develop this evidence even for purposes of a bill of exception. Granting or denying a motion in limine does not preserve error. Hartford Accident & Indemnity Company v. McCardell, Tex., 369 S.W.2d 331.

■ Even if we be in error in holding the trial court's actions were not erroneous, we are of the view that any error was harmless. Rules 434, Texas Rules of Civil Procedure. In an effort to show harm, appellant particularly stresses that the evidence shows a trial lawyer's productive time is about 1500 hours per year. There was evidence to this effect but there was evidence also that his productive time was from 2500 to 3000 hours per year. Frankly,

an attorney who has productive time of only 1500 hours per year just isn't working. We do not understand appellant's mathematics. Mr. Smith testified he took no vacations, frequently worked at night and on Sundays. Too, on the few trips he took, such as to visit his ill father, he took some files in this case with him and worked on them while in San Marcos. Further, time is only one factor considered in determining the fee. It is also noticed that the witnesses for appellant testified to a reasonable fee of $75,000.00 to $90,000.00. Appellee's witnesses testified to $300,000.00 and $400,-000.00. The jury fixed a relatively median fee. In fact, it was closer by many thousands of dollars to the fee fixed by appellant's witnesses.

■ As we before stated, we have read the entire record and, based on the whole record, we can find no harm resulting from any asserted error.

■ There was no error in the action of the 133rd District Court in striking the Second Amended Original Answer of appellant. On August 12, 1963 the case was by agreement set for trial for October 7. Appellant, with leave of the 61st District Court, without notice to appellees, filed such answer. Under Article 199, Vernon's Ann. Tex.Civ.St., the judge of any district court in Harris County may dispose of any matter for any other judge that pertains to any pending case. The appellant showed no diligence in filing the answer. It was filed less than 7 days before the case was set for trial and it was discretionary with the trial court as to whether he should strike the answer. Rule 63, T.R.C.P. Davis v. National Acceptance Corporation, 233 S.W. 2d 321 (CCA), ref., n. r. e.; O'Meara v. Saunders, 199 S.W.2d 689 (CCA), ref., n. r. e.; Weaver v. Bogle, 325 S.W.2d 457 (CCA), n. w. h.

The answer alleged the following defensive matters:

1. Allowance of the $150.00 per month that appellant had paid as a retainer.

2. Allowance of what had been paid other attorneys before and after Smith's employment.

3. Illness of Smith.

4. Involvement of Smith in other suits to the detriment of appellant.

The illness of Smith and his work on other matters were evidentiary on the ultimate issue of his attorney's fees. There was full development of the evidence on these matters. What was paid other attorneys was not to be deducted in the suit. The only offer of evidence by appellant was as to what was paid other attorneys, which has been discussed above.

■ The $45,000.00 that Smith had admittedly received on account was deducted from the amount found by the jury. Smith's contention was that the $150.00 monthly retainer arranged prior to any talk about a divorce suit was to cover matters not relating to the divorce. This was gone into without objection on trial. By the evidence we think a fact issue was raised. By admitting testimony the issue was tried by consent. Appellant, had she asked to be allowed to file a trial amendment, would have been entitled to file it. She made no such request. If a trial amendment were filed she, on proper request, would have been entitled to a special issue, but she did not ask for an issue. This defense was, therefore, waived. See Rules 66, 67 and 279, T.R.C.P.

■ Finally, appellant contends that there should have been no attorney's fee allowed Smith for the attorney representing him in this case because no demand was made by Smith on appellant for his attorney's fee prior to filing of his intervention in the divorce suit and prior to his filing his suit in the District Court for his attorney's fee. Related to this is the asserted error that her requested special issues, inquiring as to whether Smith made such demand and if so what the amount of the demand was, were erroneously refused.

The attorney's fee was allowed under Article 2226, V.A.T.S. for personal services rendered. It provides in part that "any person having a valid claim against a person * * * for personal services rendered * * * may present the same to such person * * *; and if at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he finally obtains a judgment for any amount thereof as presented for payment * * * he may also recover * * * a reasonable amount as attorney's fees * * *."

No formal written bill was ever sent appellant. However, in November, 1962, after appellant had sent the telegram to the Master in Chancery that Mr. Smith no longer represented her (She never sent any such written message to Mr. Smith), Mr. Smith discussed the balance of his fee with Mrs. Hudson and she stated she would pay him no more than $5,000.00. In December, 1962 or January, 1963, Mr. Smith discussed his fee with one of appellant's attorneys and was told appellant would pay no more than $25,000.00. The appellant herself testified that after the telegram to the Master in Chancery she talked with Mr. Smith and told him she was not going to pay him any more money. On January 29, 1963, appellees filed a plea of intervention in the divorce proceeding pending in the Court of Domestic Relations No. 2 of Harris County, suing for his attorney's fee of $300,000.00 and allowed for a credit of the $45,000.00 already paid. He asked for no attorney's fee for the attorney filing the petition in intervention. He asked the judge of that court to fix his fee as was contemplated by his letter of employment to appellant. Appellant then, joined by Mr. Hudson, made a motion to strike the intervention, or alternatively to sever the claim for attorney's fee. In the motion it was recited there was a dispute between appellant and Mr. Smith as to the amount of this attorney's fee and that appellant, under the property settlement agreement, assumed any obligation for fees to any of her attorneys. On February 13, 1963, the cause of action set up in the petition in intervention was severed and the cause transferred to the 61st District Court. On July 25, 1963, in said district court appellees filed their "Second Amended Plea in Intervention" and for the first time asked for an attorney's fee for his attorney in this case.

█ It is not required by Article 2226 that the claim be presented 30 days prior to the filing of suit. It is only necessary that a claim be presented and if it is not paid within 30 days an attorney's fee is recoverable in any suit where the claimant recovers a part of the claim if he is represented by counsel. Gateley v. Humphrey, 151 Tex. 588, 254 S.W.2d 98.

█ We are of the view, however, that when appellees filed their intervention in the divorce suit claiming a reasonable attorney's fee of $300,000.00, this was, under the facts of this case, a sufficient presentation of the claim. No attorney's fee for the attorney representing appellees was asked. Appellant opposed a determination in the divorce proceeding of an attorney's fee and asked dismissal of the intervention, or, in the alternative, that the matter be severed and transferred to the district court. Except as an incident to the trial of the divorce suit and a judgment against the husband for his wife's attorney's fee, the Domestic Relations Court would have no jurisdiction to award attorney's fees. The controversy between the wife and her attorney would be a matter cognizable, depending on the amount involved, in the district or county court. Here it would be the district court. At the time of the motion to dismiss or to transfer, it was established that appellant would be liable for the fees to her attorneys. This plea in intervention was a sufficient presentation. It was not until many days more than 30 after this that appellees filed what they denominated "Second Amended Petition in Intervention" in the case in the district court and for the first time asked for an attorney's fee for their attorney. The purpose of the requirement for presentation of a claim is to allow

the person against whom it is asserted an opportunity to pay the claim in 30 days after she has notice of the claim without incurring an obligation for attorney's fee. No particular form of presentation is required. Huff v. Fidelity Union Life Ins. Co., 158 Tex. 433, 312 S.W.2d 493; National Life & Accident Ins. Company v. Dove, 141 Tex. 464, 174 S.W.2d 245.

We are further of the view, under the facts of this case, no formal presentation was necessary because appellant herself testified that shortly after October 8, 1962, she told Mr. Smith she was not going to pay him any more attorney's fee because he wasn't entitled to any. Too, at another time she stated she would pay no more than $5,000.00, and through her then attorney she informed Smith she would pay no more than $25,000.00. Under such circumstances presentation is waived because such would be a useless gesture. Lang v. Harwood, 145 S.W.2d 945 (C.C.A.), no writ history; City of El Paso v. Pan American Supply Co., 251 S.W.2d 742 (C.C.A.), ref., n. r. e.

Affirmed.